UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HOWARD RIMSON,

Plaintiff,

v. Case No. 8:26-cv-1433-VMC-NHA

AUTOZONE, INC.,

Defendant.
_______________________________/

**ORDER**

This matter is before the Court on consideration of Defendant AutoZone, Inc.'s Motion to Dismiss Amended Complaint (Doc. # 23), filed on August 3, 2026. Plaintiff Howard Rimson responded on August 5, 2026. (Doc. # 24). The Motion is denied.

## I. Background

In this action, Mr. Rimson brings claims against AutoZone for violations of 42 U.S.C. §§ 1981 and 1982 (Counts I and II), as well as Florida law claims for civil assault (Count III) and civil battery (Count IV). (Doc. # 19). The claims relate to Mr. Rimson's interactions with employees at an AutoZone store in Poinciana, Florida. (Id. at 3).

On September 5, 2025, Mr. Rimson, who is African American, visited the AutoZone store to return spark plugs he

had purchased three days earlier. (Id.). "As and while [Mr. Rimson] waited in line to be served, an Assistant Manager named Dilenny Angeles[], Latina, was assisting two (2) Latino customers ahead of [Mr. Rimson]. After completing serving these Latino customers, Angeles took a phone call forcing [Mr. Rimson] to continue to wait for service. During the telephone call Angeles continued to look at [Mr. Rimson] as he waited to be assisted and/helped." (Id.). "After completing her telephone call, Angeles did not attempt to inquire into, ask, or see if [Mr. Rimson] needed assistance," but instead "assist[ed] the Latino client who had skipped [Mr. Rimson] in line, even though Angeles knew [Mr. Rimson] was next in line and had been standing in line waiting to be assisted." (Id. at 3-4).

"Realizing he would receive no service from Angeles, [Mr. Rimson] sought assistance form another employee. This employee began the return and check out service, checked the spark plugs, checked the receipt, and concluded everything is/was fine in order for [Mr. Rimson] to be refunded. However, this employee needed Angeles to open the cash register/drawer to refund [Mr. Rimson]'s funds." (Id. at 4). "Angeles went over and instead of opening the cash register/drawer to refund [Mr. Rimson]'s funds she started

reinspecting all the spark plugs again. . . . [T]he employee that was attempting to assist [Mr. Rimson] informed her that he already checked them, everything was fine, and he just needed the cash register/drawer open. At this moment, Angeles started speaking in Spanish to the other employee [] and saying extremely racist, derogatory and hateful comments about [Mr. Rimson] and blacks in general." (Id. at 4-5).

"Angeles falsely accused [Mr. Rimson] of criminal activity, to wit, fraud, or theft, by asserting [Mr. Rimson] was returning damaged items, and then Angeles proceeded to make racist[] and derogatory comments." (Id. at 5). She also referred to Mr. Rimson with a racial slur. (Id.). "At that point [] [Mr. Rimson] informed Angeles that he spoke and understood Spanish and that he understood everything that she stated about him and to him. In fact, [Mr. Rimson] recorded the interaction with Angeles" with his cellphone. (Id.).

Then, "Angeles got aggressive and physical towards [Mr. Rimson] by physically attempting to take [Mr. Rimson]'s phone from him, threatening [Mr. Rimson] and coming in contact with the person of [Mr. Rimson] without [Mr. Rimson]'s consent, all of which was witnessed by others in the store." (Id. at 5-6). "Mr. Rimson asked a male employee who was present during the incident with Angeles when the manager would be returning.

The employee stated that the manager would be back soon and that Mr. Rimson was welcome to wait for her if he wanted to." (Id. at 6).

"While waiting for the manager, [Mr.] Rimson decided to go ahead and purchase some coil packs for his vehicle which he had discussed earlier with the male employee and during the recorded interaction to see if they would fit his vehicle and, if they did not, he would return them later and swap them out. The employee went to the back, retrieved the coil packs, returned to the counter, and began ringing up the sale." (Id.). "However, at that point, [] Angeles intervened and told the employee that he could not sell [Mr.] Rimson anything. Angeles then told [Mr.] Rimson that he needed to leave the store immediately before she 'called the Police.'" (Id.).

"At that time, [Mr.] Rimson decided to leave as he was afraid of being arrested." (Id. at 7). "As [Mr.] Rimson was leaving, Angeles told [him] that he was not allowed back in the store and she stated that if [Mr.] Rimson returned, it would be considered trespassing and he would be 'going to jail.'" (Id.).

"The following day, on or about September 6, 2025, [Mr. Rimson] filed a complaint with AutoZone, District Manager

Yadira Santiago[], who watched the video multiple times." (Id. at 7). Despite reporting Angeles' conduct to AutoZone, Mr. Rimson alleges that Angeles "remains employed with AutoZone, with no indication of or assertion by AutoZone of any disciplinary action whatsoever." (Id. at 8).

Mr. Rimson initiated this action on May 13, 2026 (Doc. # 1), and then filed his amended complaint on July 8, 2026. (Doc. # 19). Now, AutoZone moves to dismiss the amended complaint. (Doc. # 23). Mr. Rimson has responded (Doc. # 24), and the Motion is ripe for review.

## II. Legal Standard

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic

> recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004), abrogated on other grounds by Twombly, 550 U.S. 544.

Additionally, motions filed under Federal Rule of Civil Procedure 12(b)(1) question this Court's jurisdiction over the subject matter of the case. Motions to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) may attack jurisdiction facially or factually. Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir. 2003). Where the jurisdictional attack is based on the face of the pleadings, as here, the Court merely looks to determine whether the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in the plaintiff's complaint are taken as true for purposes of the motion.

Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990). In factual attacks, on the other hand, the Court delves into the arguments asserted by the parties and the credibility of the evidence presented. Garcia v. Copenhaver, Bell, & Assocs., 104 F.3d 1256, 1260-61 (11th Cir. 1997).

## III. Analysis

### A. Section 1981 and 1982 Claims

#### 1. Section 1981

Mr. Rimson pleads his first claim under 42 U.S.C. § 1981. (Doc. # 19 at 9). Section 1981 provides: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a). "[T]he term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

"The elements of a cause of action under § 1981 are: (1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute." Lopez v. Target Corp., 676 F.3d 1230, 1233 (11th Cir. 2012) (citation and internal quotation marks omitted). "Section 1981 does not provide a general cause of action for all racial harassment that occurs during the contracting process. Rather, in the retail context, the plaintiff must demonstrate the loss of an actual . . . contract interest." Kinnon v. Arcoub, Gopman & Assocs., Inc., 490 F.3d 886, 892 (11th Cir. 2007) (citation and internal quotation marks omitted). Thus, "a viable § 1981 claim in the retail context 'must allege that the plaintiff was actually prevented, and not merely deterred, from making a purchase.'" Lopez, 676 F.3d at 1234 (citation omitted).

The first two elements of Mr. Rimson's Section 1981 claim do not appear to be disputed. Mr. Rimson is a member of a racial minority. The insults and racial slurs Angeles directed at Mr. Rimson support that AutoZone intentionally discriminated against him based on his race.

Instead, AutoZone argues that this claim fails as to the third element because Mr. Rimson "was able to complete his

refund transaction on the same day he went to AutoZone to do just that" so that "he was not 'actually denied the ability . . . to make, perform, enforce, modify, or terminate a contract' and cannot show 'the loss of an actual contract interest.'" (Doc. # 23 at 10-11) (citation omitted). True, Mr. Rimson cannot support a Section 1981 claim based on the rudeness he experienced when he returned the spark plugs. Despite that poor treatment, Mr. Rimson successfully completed the transaction to return the spark plugs. See Lopez, 676 F.3d at 1234 ("Lopez cannot state a § 1981 claim. Lopez was able to complete his transaction at the same Target store, buying his desired goods at the same price and using the same payment method as any other customer. Thus, Lopez was not actually denied the ability . . . to make, perform, enforce, modify, or terminate a contract and cannot show the loss of an actual contract interest." (citation and internal quotation marks omitted)).

AutoZone, however, mostly ignores Mr. Rimson's allegation that he was prevented from making a different purchase. Mr. Rimson alleges that, after returning the spark plugs, he prepared to purchase coil packs. (Doc. # 19 at 6). When the other employee was ringing up the coil packs for Mr. Rimson, "Angeles intervened and told the employee that he

could not sell [Mr.] Rimson anything. Angeles then told [Mr.] Rimson that he needed to leave the store immediately before she 'called the Police.'" (Id.). This refusal to sell items to Mr. Rimson was a refusal to make a contract with him, as necessary to establish the third element of the Section 1981 claim.

The Motion to dismiss the Section 1981 claim is accordingly denied.

### 2. **Section 1982**

Mr. Rimson pleads his second claim under 42 U.S.C. § 1982. (Doc. # 19 at 11). Section 1982 provides: "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982.

"Section 1982 is similar to § 1981, 'except that it focuse[s], not upon rights to make and enforce contracts, but rights related to the ownership in property.'" Long v. Aronov Realty Mgmt., Inc., 645 F. Supp. 2d 1008, 1016-17 (M.D. Ala. 2009) (citation omitted). "The elements of a § 1982 claim 'parallel' those of a § 1981 one: A plaintiff must show the same first two elements, and 'interference with the rights or benefits connected with the ownership of property.'" Id. at

1017 (citation omitted). Indeed, Supreme Court "precedents have long construed §§ 1981 and 1982 similarly." CBOCS W., Inc. v. Humphries, 553 U.S. 442, 447 (2008). "A plaintiff cannot succeed in a § 1982 claim without showing racial animus, intentional discrimination, and deprivation of the plaintiff's rights because of race." Hosea v. Langley, No. CIV.A. 04-0605-WS-C, 2006 WL 314454, at *29 (S.D. Ala. Feb. 8, 2006), aff'd, 226 F. App'x 863 (11th Cir. 2007). "Section 1982 covers every racially motivated refusal to sell or rent." Long, 645 F. Supp. 2d at 1024 (citation and internal quotation marks omitted).

The Motion is denied as to the Section 1982 claim. Just as with the Section 1981 claim, Mr. Rimson has stated a claim based on AutoZone's refusal to sell Mr. Rimson the coil packs, which was plausibly the result of intentional discrimination and racial animus.

**3. Standing**

AutoZone also challenges Mr. Rimson's standing to bring his Section 1981 and 1982 claims. (Doc. # 23 at 11-13).

"A plaintiff's standing to bring and maintain her lawsuit is a fundamental component of a federal court's subject matter jurisdiction." Baez v. LTD Fin. Servs., L.P., No. 6:15-cv-1043-PGB-DCI, 2016 WL 3189133, at *2 (M.D. Fla.

June 8, 2016) (citing Clapper v. Amnesty Int'l USA, 568 U.S. 398, 408 (2013)). The doctrine of standing "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016). To establish standing, "[t]he plaintiff must have (1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Id. An injury-in-fact is "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Id. at 1548 (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)). The injury must be "particularized," meaning it "must affect the plaintiff in a personal and individual way." Id. (quoting Lujan, 504 U.S. at 560 n.1). Additionally, the injury must be "concrete," meaning "it must actually exist." Id.

AutoZone's standing argument presupposes that Mr. Rimson has not stated a claim for a past violation of Section 1981 or 1982. See (Doc. # 23 at 11) ("Not having any impaired contractual right to claim injury for, Rimson alleges that he has 'never returned' to the AutoZone in question, which

'preclude[s] him from conducting or completing future transactions.' This admission deprives him of standing." (citation omitted)). For that reason, AutoZone insists that Mr. Rimson's standing must be assessed based on the likelihood of future injury under Sections 1981 and 1982, and that the amended complaint "cannot support any 'actual or imminent' injury." (Id. at 13); see also (Id.) ("There is no guarantee that Rimson will encounter the alleged discriminatory actor — or any discrimination whatsoever — if he returns.").

AutoZone's argument fails because, as addressed in the previous sections, Mr. Rimson has plausibly pled a past violation of Sections 1981 and 1982. As a member of a racial minority who was denied the right to purchase the coil packs based on his race, Mr. Rimson has pled a concrete and particularized injury. He therefore has standing to sue. The Motion is denied on this issue.

**B. Assault and Battery**

AutoZone also moves to dismiss the assault and battery claims. (Doc. # 23 at 13-15).

"Under Florida law, assault is 'an intentional, unlawful threat by word or act to do violence to the person of another coupled with an apparent ability to do so, and doing some act which creates a well founded fear of such violence being

done.'" AIX Specialty Ins. Co. v. Ashland 2 Partners, LLC, 383 F. Supp. 3d 1334, 1338-39 (M.D. Fla. 2019) (quoting Fla. Stat. § 784.011). "The required intent is to do the act, not the intent to do violence to the victim." Id. at 1339 (citing Cambell v. State, 37 So. 3d 948, 950 (Fla. 5th DCA 2010)). "And under civil assault, '[t]he element of intent . . . does not necessarily involve the subjective intent to do harm.'" Id. (citation omitted). Under Florida civil law, battery "consists of the infliction of a harmful or offensive contact upon another with the intent to cause such contact or the apprehension that such contact is imminent." Quilling v. Price, 894 So. 2d 1061, 1063 (Fla. 5th DCA 2005).

Mr. Rimson pleads these claims against AutoZone under a respondeat superior theory for Angeles' alleged actions. "A principal is liable for the tortious conduct of his agent, even though not authorized, if the agent was acting within the scope of his employment or his apparent authority." Life Ins. Co. of N. Am. v. Del Aguila, 417 So. 2d 651, 652 (Fla. 1982). "The conduct of an employee is considered within the course and scope of employment when it (1) is of the kind the employee is hired to perform, (2) occurs substantially within the time and space limits authorized or required by the work to be performed, and (3) is activated at least in part by a

purpose to serve the master." Goss v. Hum. Servs. Assocs., Inc., 79 So. 3d 127, 132 (Fla. 5th DCA 2012). "Stated another way, only when the employee 'steps aside from his employment to . . . accomplish some purpose of his own,' is the act not within the scope of employment." Trabulsy v. Publix Super Mkt., Inc., 138 So. 3d 553, 555 (Fla. 5th DCA 2014). "Analysis of the employee's conduct focuses on the purpose of the employee's act rather than on the method of its performance." Gonpere Corp. v. Rebull, 440 So. 2d 1307, 1307 (Fla. 3d DCA 1983). "Whether an employee's act was within the scope of employment is generally a question of fact for the jury." McKee v. Crestline Hotels & Resorts, LLC, 376 So. 3d 758, 763 (Fla. 4th DCA 2024).

AutoZone argues that Angeles' conduct as pled was not within the scope of her employment. (Doc. # 23 at 14-15). According to AutoZone, although "the conduct allegedly occurred during the time and space limits of employment, the conduct as alleged is not the kind AutoZone hired Angeles to perform" and does not "serve[] any purpose for AutoZone." (Id.).

The Court disagrees. Mr. Rimson has plausibly alleged that Angeles' conduct was of the kind Angeles was hired to perform and was activated at least in part by a purpose to

serve AutoZone. As plausibly alleged, Angeles' work involved interacting with customers, processing returns, and ringing up purchases. Her complained-of conduct occurred in AutoZone's premises during an interaction with a customer, Mr. Rimson, and related directly to Mr. Rimson's attempts to return some goods. There are also plausible allegations that Angeles was motivated, at least in part, to serve AutoZone. Mr. Rimson alleges that, shortly before the assault and battery, Angeles accused him "of criminal activity, to wit, fraud, or theft, by asserting [Mr. Rimson] was returning damaged items." (Doc. # 19 at 5). This allegation supports that Angeles was motivated throughout her interaction with Mr. Rimson to protect AutoZone's business. See Trabulsy, 138 So. 3d at 555-56 ("The courts have consistently held that battery by an employee in protecting the employer's property is within the scope of employment. . . . In business related disputes such as this one, particularly when they occur on the employer's premises, the courts have repeatedly concluded that the employee's purpose in committing a battery is a jury question."). It is also plausible that Angeles was seeking in part to serve AutoZone by grabbing at Mr. Rimson's phone to prevent his filming Angeles' racist comments. Release of such video would reflect poorly on AutoZone.

The Court is not suggesting that AutoZone authorizes its employees to insult its customers and physically prevent them from filming or reporting negative interactions with AutoZone employees. But, again, such authorization is not required. See Del Aguila, 417 So. 2d at 652 ("A principal is liable for the tortious conduct of his agent, *even though not authorized*, if the agent was acting within the scope of his employment or his apparent authority." (emphasis added)). Instead, it is enough for the amended complaint to plausibly "attribute [Angeles'] anger, assault[,] and battery to overzealousness in the protection of what [she] envisioned as [her] employer's interests." Columbia By the Sea, Inc. v. Petty, 157 So. 2d 190, 194 (Fla. 2d DCA 1963) (holding that jury could conclude that maitre d' of restaurant acted within scope of employment when he battered customer with an ashtray during an attempt to get him to pay thirty-five-cent upcharge for salad dressing); Jax Liquors, Inc. v. Hall, 344 So. 2d 247, 247 (Fla. 1st DCA 1976) (holding that armed security guard who removed unruly bar patron and shot him in the parking lot was within the scope of his employment despite the fact that the shooting was "entirely unnecessary to any legitimate purpose of [his] employment" because the confrontation was initiated to serve his employer's interests and escalated "with

unbroken continuity" to the shooting); Gonpere Corp., 440 So. 2d at 1307 (whether building manager's act of shooting two tenants was within scope of employment was question of fact for jury where shooting resulted from dispute over eviction notice).

The Motion is denied.

## IV. Conclusion

All of Mr. Rimson's claims survive the pleading stage. As such, the Court rejects AutoZone's argument that the amended complaint is "frivolous, unreasonable, or without foundation" such that AutoZone is entitled to attorney's fees. (Doc. # 23 at 15). If the parties agree that AutoZone was misnamed in the amended complaint, as AutoZone asserted in a footnote (Id. at 1 n.1), Mr. Rimson should file a motion to amend the complaint to correct the name.

Finally, the Court declines to address the alleged spoliation of evidence Mr. Rimson complains of in his response. (Doc. # 24 at 18-20). This issue is irrelevant to the Motion. If Mr. Rimson wishes to raise a spoliation issue with the Court, he must file a proper motion.

Accordingly, it is hereby

**ORDERED**, **ADJUDGED**, and **DECREED:**

(1) Defendant AutoZone, Inc.'s Motion to Dismiss Amended Complaint (Doc. # 23) is **DENIED.**

(2) Defendant is directed to file its answer within 14 days of this Order.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 17th day of August, 2026.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE